IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANN R. RUPLI                          :

                                         :

     v.                              :   Civil Action No. DKC 16-0181

                                         :

OCWEN LOAN SERVICING, LLC             :

                                         :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this consumer lending case is a motion to dismiss filed by Defendant Ocwen Loan Servicing, LLC ("Defendant").  (ECF No. 12).  The issues have been fully briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, Defendant's motion to dismiss will be granted.

**I.   Background**

**A. Factual Background[1]**

In December 2006, Plaintiff Ann Rupli ("Plaintiff") entered into a mortgage loan agreement (the "Loan") from American Brokers Conduit in the amount of $579,500.00.  The adjustable rate note (the "Note") was secured by a deed of trust (the "Deed of Trust") on the residential real property located at 1914 Elkhart Street, Silver Spring, Maryland 20910 (the "Property").

---

[1] When considering a motion to dismiss for failure to state a claim, the well-pleaded allegations in the complaint are accepted as true.  *See Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).

(ECF No. 2 ¶¶ 52-53; *see* ECF Nos. 12-2; 12-3).[2]   Defendant served

as the loan servicer.

   Plaintiff asserts that she submitted a qualified written

request ("QWR") under the Real Estate Settlement Procedures Act

("RESPA"), 12 U.S.C. § 2601, *et seq.*, on May 12, 2014.   She

further asserts that she sent a Validation of Debt letter to

---

   [2] In reviewing the motion to dismiss, the court may consider
allegations in the complaint, matters of public record, and
documents attached to the motion to dismiss that are integral to
the complaint and authentic.   *See Philips v. Pitt Cnty. Mem'l
Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Quattlebaum v. Bank of
Am., N.A.*, No. TDC-14-2688, 2015 WL 1085707, at *1 n.1 (D.Md.
Mar. 10, 2015).   In the United States Court of Appeals for the
Fourth Circuit, documents referenced and relied upon by the
plaintiff can be considered without converting a motion to
dismiss into one for summary judgment.   *See Sec'y of State for
Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir.
2007).   Here, attached as exhibits to its motion to dismiss,
Defendant submits documentation that may be considered without
converting the motion into one for summary judgment if the
documents are integral to the claims advanced by Plaintiff in
the complaint.
   Plaintiff disputes generally the authenticity of the
documents.   Noting that "[n]ot a single exhibit is supported by
affidavit," she argues that she "cannot and will not agree that
all of Defendant's exhibits are authentic." (ECF No. 18, at 1).
In particular, Plaintiff challenges the authenticity of the Note
because it "was never produced and authenticated by someone with
personal knowledge, or in an affidavit," and she asserts that
the words "negative amortization" were not used in the Note.
(*Id.* at 1-2; *see* ECF No. 12-2, at 1).   Plaintiff further
contests the authenticity of her loan modification application
because, she asserts, the exhibit is missing pages. (ECF No.
18, at 2; *see* ECF No. 12-4).   Defendant has since withdrawn this
exhibit from consideration. (ECF No. 19, at 4 n.3).   The
contents of the Note and Plaintiff's loan modification
application need not be considered in resolving the pending
motion to dismiss.   Plaintiff offers no other challenge to the
authenticity of Defendant's remaining exhibits, and they may be
considered by the court if integral to Plaintiff's claims.

Defendant on May 15, "disputing the alleged debt claimed by []
Defendant in its letter dated April 27" and requesting
validation under the Fair Debt Collection Practices Act
("FDCPA"), 15 U.S.C. § 1692g. (ECF No. 2 ¶¶ 54, 74; *see* ECF No.
12-9). Defendant received Plaintiff's letter on May 19 and
acknowledged receipt on May 23. (*See* ECF No. 12-9, at 5, 6).
Defendant responded substantively to Plaintiff's QWR on June 3.
(ECF Nos. 12-10; 12-11).[3] Defendant's response stated that the
owner or investor of the Loan was Residential Asset Securities
Corporation, Home Equity Mortgage Asset-Backed Pass-Through
Certificates, Series 2007-KS3. (ECF No. 2 ¶¶ 54, 75).

On August 14, 2014, Defendant allegedly issued to Plaintiff
a Notice of Intent to Foreclose on the Property, which listed
the owner or investor of the Loan as Deutsche Bank National
Trust Company, as Trustee for American Home Mortgage Asset Trust
2007-2. (*Id.* ¶ 55). In April 2015, a letter from Defendant to
Plaintiff noted that the owner or investor of the Loan was
Deutsche Bank National Trust Company, as Trustee for New Century
Home Loan Trust, Series 2005-D, Asset Backed Pass-Through
Certificates. (*Id.* ¶ 56). Plaintiff asserts that she "received
no . . . disclosure in writing regarding the sale of [the Loan]
from the first, to the second, and then to the third owner

---

[3] Defendant provided documentation updating payment history
on the Loan on December 11, 2014, and April 20, 2015. (ECF No.
12-12).

Defendant alleged, but only documents provided by Defendant reflecting the varying names of the owner/investor." (*Id.* ¶ 57).

Meanwhile, Plaintiff applied for a loan modification in August 2014. Defendant acknowledged Plaintiff's request and offered her a Home Affordable Modification Program ("HAMP") trial period plan ("TPP"). (ECF No. 12-5). She asserts that the TPP offer "letter contained conflicting and confusing information by stating Plaintiff had 14 days from the date of the letter to remit the first payment . . . [and] reflecting a first payment date of October 1, 2014." (ECF No. 2 ¶ 58).[4] In a letter dated September 11, Plaintiff requested additional information regarding the TPP because Defendant "failed to enclose with its offer the HAMP-required language that must include both the proposed interest rate and income figures prefiguring a qualification for HAMP loan modification." (*Id.* ¶ 59). There is no allegation that Plaintiff accepted the proposed TPP, and Defendant asserts that she did not. (*See* ECF

---

[4] Under the proposed TPP, Plaintiff would submit three monthly trial payments of $2,555.64, starting by October 1, 2014. Defendant permitted Plaintiff to accept the TPP either by making the first payment by September 8 or by communicating acceptance by September 8 and remitting the first trial payment by October 1. (ECF No. 12-5, at 4, 8, 11, 14). Defendant explained that the TPP was not a modification of the Loan: "At this point, however, it is important for you to understand that you have not yet met all of the qualifications for a [p]ermanent [m]odification. In order to qualify, you must first comply with the provisions of the [TPP]." (*Id.* at 8).

No. 12-1, at 14).   Defendant did not respond to Plaintiff's letter, instead issuing a mortgage statement on September 17: "[Plaintiff's] trial installment [is due by] 10/01/2014 in the amount of $1,354.44." (ECF No. 2 ¶ 60).   Plaintiff alleges that she promptly paid that amount.   Defendant issued a mortgage statement on October 17 reflecting an amount due of $3,910.08. Shortly thereafter, Defendant issued to Plaintiff a check for $1,354.44 referencing an "Escrow Disbursement Account." (*Id.* ¶ 62).   The mortgage statement dated November 11 reflected a total amount due of $767,368.59, and Defendant sent Plaintiff a letter dated November 14 confirming that she did not make the initial TPP payments within the required timeframe and, accordingly, her application for a loan modification was denied. (*Id.* ¶¶ 63-64; *see* ECF No. 12-8).   Defendant provided the Loan transaction history by letter on April 20, 2015, noting a balance of $637,078.88. (ECF No. 2 ¶ 78).   Plaintiff asserts that, as a result of Defendant's failure to comply with governing federal statutes, she "has been assessed additional fees and costs including an interest per day assessment." (*Id.* ¶ 66).

### B. Procedural Background

Plaintiff commenced this action in the Circuit Court for Montgomery County on December 9, 2015.   Defendant removed the case to this court on January 19, 2016. (ECF No. 1).   Plaintiff advances four counts against Defendant for: violation of 12

C.F.R. § 1024.41, a regulation under RESPA concerning loss mitigation procedures, because Defendant allegedly did not properly consider her HAMP loan modification application (Count I); violation of the FDCPA because Defendant purportedly failed to validate her debt and misidentified the owner or investor of the Loan (Count II); violation of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5481, 5564 (Count III);[5] and deceptive trade practices in violation of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-301 *et seq.* (Count IV).   (ECF No. 2 ¶¶ 79-111).[6]   Plaintiff's

---

[5] Plaintiff also includes in Count III a citation to 15 U.S.C. § 16921(b)(6).   No such federal statute exists. Plaintiff may have meant to refer to 15 U.S.C. § 1692*l*, which authorizes the Federal Trade Commission to enforce compliance with the FDCPA.

Indeed, Plaintiff may not pursue her claims under the CFPA in Count III.   The statute states that "[i]f any person violates a federal consumer law, the [Consumer Financial Protection Bureau ('CFPB')] may . . . commence a civil action against such a person.   The [CFPB] may act in its own name and through its own attorneys in enforcing any provision of this title, rules thereunder, or any other law or regulation . . . ." 12 U.S.C. § 5564(a)-(b).   The right of action to enforce the CFPA rests with the CFPB; there is no language that indicates that the statute may be enforced by a private citizen.   *See Kalisz v. Am. Express Centurion Bank*, No. 1:15-CV-01578, 2016 WL 1367169, at *2 (E.D.Va. Apr. 5, 2016) ("Any violation of the CFPA may not be litigated by Plaintiff because they cannot be enforced by a private individual.").   Count III will be dismissed.

[6] None of Plaintiff's four counts asserts a claim under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1631 *et seq.* Nevertheless, Plaintiff appears to seek damages under TILA for Defendant's purported failure to provide disclosures concerning the sale or transfer of the Loan.   (*See* ECF Nos. 2 ¶ 57; 18, at 7).   Beyond conclusory statements in the complaint referencing

complaint seeks injunctive relief, monetary damages, and attorneys' fees and costs.

Defendant moved to dismiss the complaint on February 16, 2016. (ECF No. 12). Plaintiff responded in opposition (ECF No. 18), and Defendant replied (ECF No. 19).[7]

## II. Standards of Review

Defendant challenges Plaintiff's standing to enforce HAMP guidelines. Because standing is an element of subject matter jurisdiction, Defendant's motion to dismiss for lack of standing should be treated under Fed.R.Civ.P. 12(b)(1). *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005); *Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.*, 145 F.3d 660, 661-62 (4th Cir. 1998) (affirming the district court's dismissal of the complaint for lack of standing pursuant to Rule 12(b)(1)). The existence of subject matter jurisdiction is a threshold issue the court must address before considering the

---

TILA, Plaintiff provides no allegations sufficient to state a plausible claim against Defendant. Plaintiff provides no facts or argument to bring Defendant within the reach of TILA's provisions as a "creditor." *See* 15 U.S.C. § 1641(g)(1) ("[N]ot later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the *creditor* that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer." (emphasis added)). Accordingly, any TILA claims in the complaint cannot survive Defendant's motion to dismiss.

[7] Plaintiff filed a duplicative response in opposition. (ECF No. 17). For purposes of clarity and consistency, this memorandum opinion will cite to ECF No. 18 in reference to Plaintiff's opposition papers.

merits of the case. *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999).

Defendant also moves to dismiss under Fed.R.Civ.P. 12(b)(6), arguing that Plaintiff's complaint fails to state a claim. The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). A complaint need only satisfy the standard of Fed.R.Civ.P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty.*

*Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

Allegations of fraud, which Plaintiff asserts in Count IV of the complaint, are subject to the heightened pleading standard of Fed.R.Civ.P. 9(b). *Harrison*, 176 F.3d at 783. Rule 9(b) states that, "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Such circumstances typically "include the 'time, place, and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Id.* at 784 (quoting 5 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1297 (2d ed. 1990)). Rule 9(b) provides the defendant with sufficient notice of the basis for the plaintiff's claim, protects the defendant against frivolous suits, eliminates fraud actions where all of the facts are learned only after discovery, and safeguards the defendant's reputation. *Id.* at 784 (citation omitted). Fraud allegations

that fail to comply with Rule 9(b) warrant dismissal under Rule 12(b)(6).  *See Harrison*, 176 F.3d at 783 n.5.

## III. Analysis

### A.    RESPA Regulation (Count I)

Defendant's initial argument is that Plaintiff lacks standing to pursue her claims because she does not have a legal right to enforce HAMP and its guidelines.  (ECF No. 12-1, at 19-22).  In Count I, Plaintiff asserts that Defendant violated 12 C.F.R. § 1024.41 in connection with her purported loss mitigation application.[8]  As best the court can discern, Plaintiff does not seek to enforce HAMP guidelines; rather, Plaintiff grounds Count 1 in the RESPA regulations.  As § 1024.41 itself makes clear, "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."[9]  Thus, Plaintiff has standing, and the

---

[8]  A loss mitigation application is defined in the regulations as "an oral or written request for a loss mitigation option that is accompanied by any information required by a servicer for evaluation for a loss mitigation option."  12 C.F.R. § 1024.31.  A loss mitigation option refers to "an alternative to foreclosure offered by the owner or assignee of a mortgage loan that is made available through the servicer to the borrower."  *Id.*

[9]  Section 2605(f) allows for recovery of "actual damages to the borrower as a result of the failure" to comply with 12 C.F.R. § 1024.41 and also provides for additional damages of no more than $2,000.00 if there is "a pattern or practice of noncompliance."

question is whether Plaintiff has alleged sufficient facts to survive Defendant's Rule 12(b)(6) motion to dismiss.

As was recently explained, "§ 1024.41 is a [CFPB] regulation promulgated pursuant to § 1022(b) of the Dodd-Frank Act, 12 U.S.C. 5512(b), and [RESPA]. Among other things, it bars a loan servicer from foreclosing on a property in certain circumstances if the borrower has submitted a complete loan modification application." *Reed v. Bank of Am. Home Loans*, No. PJM-13-3265, 2016 WL 3218720, at *11 (D.Md. June 10, 2016). According to Plaintiff, Defendant violated § 1024.41 in three ways. First, Plaintiff contends that Defendant failed to notify Plaintiff within five days of receiving a loss mitigation application that it had determined that the application was complete or incomplete. (ECF No. 2 ¶ 84). Under Section 1024.41(b)(2)(i):

> If a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall:[10]
>
> > (A) Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete; and
> >
> > (B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after

---

[10] There are no allegations regarding the date of the foreclosure sale. The parties do not dispute that this provision would be applicable.

> receiving the loss mitigation
> application that the servicer
> acknowledges receipt of the loss
> mitigation application and that the
> servicer has determined that the loss
> mitigation application is either
> complete or incomplete.

Here, Plaintiff does not allege when she sent her loan modification application. The complaint states, "Plaintiff submitted an application for a loan modification for which [Defendant] confirmed its receipt via a letter dated August 8, 2014. In a letter dated August 25, 2014, [Defendant] offered to Plaintiff a [TPP]." (ECF No. 2 ¶ 58). Defendant confirmed the timeline of events: "[U]pon receiving Plaintiff's application on August 6 . . . , [Defendant] transmitted a letter dated August 8 . . . acknowledging receipt of the application and indicating that, assuming the application was incomplete, it would send an additional letter within five days requesting further documentation." (ECF No. 12-1, at 23 (citing ECF No. 12-5, at 2-3)). Plaintiff's allegations and Defendant's exhibits show that Defendant timely acknowledged Plaintiff's purported application. Moreover, Plaintiff did not contest Defendant's argument in her opposition brief. (*See* ECF No. 18, at 6-9); *Grinage v. Mylan Pharm., Inc.*, 840 F.Supp.2d 862, 867 n.2 (D.Md. 2011) ("[The plaintiff] failed to address this argument in her response, so the court will treat this claim as abandoned."

(citing *Ferdinand-Davenport v. Children's Guild*, 742 F.Supp.2d 772, 777 (D.Md. 2010))).

Second, Plaintiff alleges that Defendant violated § 1024.41 by failing to provide Plaintiff 14 days to accept or reject the offer for loss mitigation. (ECF No. 2 ¶ 85). Under § 1024.41(e)(1):

> [I]f a complete loss mitigation application is received 90 days or more before a foreclosure sale, a servicer may require that a borrower accept or reject an offer of a loss mitigation option no earlier than 14 days after the servicer provides the offer of a loss mitigation option to the borrower.

Here, Defendant offered Plaintiff a TPP by letter dated August 25. (ECF No. 12-5, at 4-20). The offer provided Plaintiff 14 days to respond: "You must contact us [by phone] or in writing . . . to confirm your intent to accept this offer *within 14 days of this notice*, or alternatively, submit your first Total Monthly Payment as defined in the enclosed offer *within 14 days of this notice*." (*Id.* at 4 (emphases in original)). Again, the allegations in the complaint and Defendant's exhibits show that Defendant provided sufficient time to consider the loss mitigation option under § 1024.41(e)(1).[11]

---

[11] In her response, Plaintiff argues only in conclusory fashion, "Defendant tries to explain [away] its failure to adhere to the [14-]day requirement afforded to the homeowner in deciding to accept/reject the offer. Plaintiff was not afforded the 14 days." (ECF No. 18, at 8). The record is uncontroverted that Defendant provided the minimum time necessary.

Finally, although not a model of clarity, the complaint asserts that Defendant violated § 1024.41 by failing to provide Plaintiff with an opportunity to appeal the denial of her loan modification application. (ECF No. 2 ¶ 87). Plaintiff submitted an application for a loan modification, which Defendant confirmed by letter on August 8, 2014. (*Id.* ¶ 58; *see* ECF No. 12-4, at 2-3). The complaint acknowledges that, on August 25, Defendant "offered to Plaintiff a [TPP]." (ECF No. 2 ¶ 58; *see* ECF No. 12-5, at 4-20). According to Plaintiff, "Defendant claims that Plaintiff had two options, accept or reject the offer. However, there are actually three options: the third is to appeal the offer (which Plaintiff did); and Defendant failed to respond." (ECF No. 18, at 8). Unfortunately for Plaintiff, there is no support in the regulations for her position.

The RESPA regulation requires that a servicer:

> Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and *a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option* as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal,

14

> as provided for in paragraph (h) of this
> section.

12 C.F.R. § 1024.41(c)(1)(ii) (emphasis added). Here, Defendant offered the TPP - a loan mitigation option - to Plaintiff by letter on August 25. Plaintiff's failure to accept the proposed TPP amounted to a rejection of Defendant's offer. *See id.* § 1024.41(e)(2)(i) ("[A] servicer may deem a borrower that has not accepted an offer of a loss mitigation option within the [14-day] deadline . . . to have rejected the offer of a loss mitigation option."). The problem with Plaintiff's claim is that the RESPA regulation requires a servicer to entertain an appeal only upon *denial* of an application. *See* 12 C.F.R. § 1024.41(h)(1) ("[A] servicer shall permit a borrower to appeal the servicer's *determination to deny* a borrower's loss mitigation application for any trial or permanent loan modification program available to the borrower." (emphasis added)).

The TPP proposal, which she sought to appeal through her September 11 letter, was not a denial of her loan modification application. Plaintiff fails to cite any authority requiring a servicer to permit an appeal of an offer rejected by the

borrower.   Accordingly,  Plaintiff  cannot  maintain  her  claims

brought  under  § 1024.41,  and  Count  I  will  be  dismissed.[12]

### B.   FDCPA (Count II)

The  FDCPA  protects  consumers  from  abusive  and  deceptive

debt  collection  practices.   *See  United  States  v.  Nat'l  Fin.*

*Servs.  Inc.*,  98  F.3d  131,  135  (4th  Cir.  1996).   In  Count  II,

Plaintiff  asserts  in  conclusory  fashion  that  Defendant  violated

the   FDCPA   by   using   a   false,   deceptive,   or   misleading

representation  or  means  in  connection  with  the  debt  collection.

(ECF  No.  2  ¶  92).   Plaintiff  also  avers  that  Defendant  violated

the  statute  by  "failing  to  validate  the  total  amount  of  the  debt

owed."   (*Id.*  ¶  93).   To  succeed  under  the  FDCPA,  Plaintiff  must

plausibly  allege  that:  "(1)  the  plaintiff  has  been  the  object  of

collection   activity   arising   from   consumer   debt,   (2)   the

defendant  is  a  debt  []  collector  as  defined  by  the  FDCPA,  and

(3)  the  defendant  has  engaged  in  an  act  or  omission  prohibited

by  the  FDCPA."   *Stewart  v.  Bierman*,  859  F.Supp.2d  754,  759

(D.Md.  2012)  (quoting  *Dikun  v.  Streich*,  369  F.Supp.2d  781,  784-

---

[12] Plaintiff  also  asserts  that  Defendant:  failed  to  provide
the  name  of  the  owner  or  investor  of  the  Loan  in  the  denial
letter  (*id.*  ¶  86);  failed  to  acknowledge  her  TPP  payment  (*id.*  ¶
88);  and  sent  conflicting  information  regarding  the  TPP  (*id.*  ¶
89).   Both  the  complaint  and  Plaintiff's  opposition  brief  are
devoid  of  references  to  RESPA  provisions  –  either  statutory  or
regulatory  –  prohibiting  such  conduct.   These  claims  cannot
withstand  Rule  12(b)(6)  review.

85 (E.D.Va. 2005)), *aff'd sub nom. Lembach v. Bierman*, 528 F.App'x 297 (4th Cir. 2013).

Defendant contends that it is not a debt collector as defined by the FDCPA. (ECF Nos. 12-1, at 26-29; 19, at 6-7).

> A "debt collector" is "any person who uses any instrumentality of interstate commerce . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Here, [the plaintiff] alleges that [the defendant] is a debt collector because the loan was in default when it was assigned to [the defendant]. A mortgage servicer may be a "debt collector" under the act where it acquires a mortgage in default "solely for the purpose of facilitating collection of such debt . . . ." 15 U.S.C. § 1692a(4). However, in the circumstances of this case, [the defendant] is a "creditor" under the FDCPA "because it 'stepped into the shoes' of [the previous creditor] when it began servicing [the plaintiff's] mortgage . . . ." *Allen v. Bank of America, N.A.*, 933 F.Supp.2d 716, 729 (D.Md. 2013) (citing *Padgett v. OneWest Bank, FSB*, No. 3:10-CV-08, 2010 WL 1539839, at *15 (N.D.W.Va. Apr. 19, 2010)).

*Combs v. Bank of Am., N.A.*, No. GJH-14-3372, 2015 WL 5008754, at *5 (D.Md. Aug. 20, 2015) (citations omitted); *see Reed*, 2016 WL 3218720, at *6 ("[A] person that acquires a loan exclusively for the purpose of collecting on a debt should be considered a 'debt collector,' while a person that purchases a loan for the purpose of *servicing* it may qualify as a 'creditor.'" (emphasis in original)). Here, the allegations in the complaint and the

exhibits properly considered at this stage reveal Defendant's efforts to provide loss mitigation while servicing the Loan. (*See* ECF No. 2 ¶¶ 1-2, 47-50, 58-64). Accordingly, the loan modification discussions show that Defendant, like a creditor, "did not acquire the mortgage primarily to collect any amount that may have been in default." *Combs*, 2015 WL 5008754, at *5 (quoting *Allen*, 933 F.Supp.2d at 729).

Even assuming that the FDCPA applies, "[a]n action to enforce any [FDCPA] liability . . . may be brought in any appropriate United States district court . . . within *one year* from the date on which the violation occurs." 15 U.S.C. § 1692k(d) (emphasis added). Plaintiff commenced this action on in the Circuit Court for Montgomery County on December 9, 2015, and violations that occurred before December 9, 2014, are time-barred. The only purported FDCPA violation within the limitations period occurred on April 20, 2015, when Defendant allegedly "fail[ed] to accurately provide the name of the creditor to whom the debt is owed" and provided a false transaction history via letter. (ECF No. 2 ¶¶ 76, 78). The Fourth Circuit has adopted the "least sophisticated debtor" standard to determine if a FDCPA violation has occurred. *Nat'l Fin. Servs.*, 98 F.3d at 135-36. Under this standard, a false statement that would not mislead the "least sophisticated consumer" is not actionable. The Fourth Circuit also determined

18

that a false or misleading statement is not actionable unless it is material. *Lembach*, 528 F.App'x at 302-03.  Here, Plaintiff provides no allegations or argument regarding the materiality of Defendant's purported misstatements.  Moreover, she fails to provide factual enhancement in support of her claim:

> Defendant has violated [] § 1692e by using false, deceptive and misleading representations as to the amount of the debt in providing a transaction history via a letter dated April 20, 2015, of the account that has a beginning balance of $637,078.88 when the original loan amount is $579,500.00 (a disparity of $57,578.88) and by providing a beginning balance for the fees that is a negative number (-$431.84).

(ECF No. 2 ¶ 78; *see* ECF No. 12-12, at 7-10).  Plaintiff's naked assertions are insufficient to show actionable misconduct by Defendant.  *See Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted).

Furthermore, to the extent Plaintiff argues that Defendant failed to validate her debt in its April 20 letter, her claim also fails.  (See ECF No. 2 ¶¶ 76, 92-93).  Section 1692g(a) governs the validation of debts and requires that:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing[:] (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless

> the consumer, within thirty days after
> receipt of the notice, disputes the validity
> of the debt, or any portion thereof, the
> debt will be assumed to be valid by the debt
> collector; (4) a statement that if the
> consumer notifies the debt collector in
> writing within the thirty-day period that
> the debt, or any portion thereof, is
> disputed, the debt collector will obtain
> verification of the debt or a copy of a
> judgment against the consumer and a copy of
> such verification or judgment will be mailed
> to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's
> written request within the thirty-day
> period, the debt collector will provide the
> consumer with the name and address of the
> original creditor, if different from the
> current creditor.

Here, there is no allegation identifying a communication – let alone an initial communication in connection with the debt collection – from Defendant that fails to provide notice as set forth in the statute. *See Short Evans v. The Fisher Law Grp., PLLC*, No. DKC-14-1994, 2015 WL 8606422, at *3 (D.Md. Dec. 14, 2015). Section 1692g(b) provides:

> If the consumer notifies the debt collector
> in writing within the thirty-day period
> described in subsection (a) of this section
> that the debt, or any portion thereof, is
> disputed, or that the consumer requests the
> name and address of the original creditor,
> the debt collector shall cease collection of
> the debt, or any disputed portion thereof,
> until the debt collector obtains
> verification of the debt or a copy of a
> judgment, or the name and address of the
> original creditor, and a copy of such
> verification or judgment, or name and
> address of the original creditor, is mailed
> to the consumer by the debt collector.

The complaint contains no allegations that Plaintiff submitted a timely request for validation of the debt under § 1692g. Instead, Plaintiff appears to misread the statute, and her conclusory allegations concerning Defendant's purported failure to validate the debt are insufficient to state a claim under the FDCPA.  Accordingly, Count II will be dismissed.

### C.    MCPA (Count IV)

Plaintiff asserts an MCPA claim in Count IV.  Under the MCPA, "a person may not engage in any unfair or deceptive trade practice" related to the extension of consumer credit or the collection of consumer debts.  Md. Code Ann., Com. Law § 13-303. Section 13-301(1) defines "[u]nfair or deceptive trade practices" to include "false . . . or misleading oral or written statement[s] . . . or other representations . . . [that have] the capacity, tendency, or effect of deceiving or misleading consumers."  Subsection 13-301(5), the provision at issue here, prohibits: "[a]dvertisement or offer of consumer goods, consumer realty, or consumer services: (i) [w]ithout intent to sell, lease, or rent them as advertised or offered; or (ii) [w]ith intent not to supply reasonably expected public demand, unless the advertisement or offer discloses a limitation of quantity or other qualifying condition."  To state an MCPA claim, "a plaintiff must adequately plead that (1) the defendant engaged

in an unfair or deceptive practice or misrepresentation, (2) the plaintiff relied upon the representation, and (3) doing so caused the plaintiff actual injury." *Turner v. J.P. Morgan Chase, N.A.*, TDC-14-0576, 2015 WL 5021390, at *4 (D.Md. Aug. 21, 2015) (citing *Currie v. Wells Fargo Bank, N.A.*, 950 F.Supp.2d 788, 796 (D.Md. 2013)).

Here, Plaintiff asserts that:

> [Defendant] represented to [her] that it offer[ed] a variety of loss mitigation plans, including those that would allow borrowers to retain ownership of their homes, such as loan modifications and forbearance agreements, but also ones that would allow borrowers to transfer ownership of their homes under more favorable terms than those allowed for by the loan agreement, such as short-sale agreements and deed-in-lieu of foreclosure programs.

(ECF No. 2 ¶ 106). According to Plaintiff, Defendant offered these services without the intent to provide them, in violation of § 13-301(5). (*Id.* ¶¶ 107-08). Claims for unfair or deceptive trade practices under the MCPA sound in fraud and must be pleaded with particularity. *Haley v. Corcoran*, 659 F.Supp.2d 714, 724 n.10 (D.Md. 2009). Subject to Rule 9(b)'s heightened pleading standard, Plaintiff must allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison*, 176 F.3d at 784 (citation and internal quotation marks omitted). Here, as Defendant argues, the

22

complaint does not allege unfair and deceptive practices with particularity. (*See* ECF No. 12-1, at 32-36).   Beyond conclusory assertions in Count IV, Plaintiff pleads no facts to allege plausibly that Defendant's representations concerning loss mitigation options amounted to unfair and deceptive practices in violation of the MCPA.   Indeed, the allegations of the complaint reveal, and Plaintiff acknowledges, that Defendant *did* offer a TPP as a loss mitigation option in August 2014. (*See* ECF Nos. 2 ¶¶ 58-64; 18, at 6-9).   There is no further factual enhancement, and even a generous reading of the complaint leads to the conclusion that Plaintiff has failed to plead an MCPA claim with sufficient particularity.   Count IV will be dismissed.[13]

## IV.  Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be granted.   A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge

---

[13] Furthermore, in her opposition brief, Plaintiff did not challenge Defendant's contention that the MCPA violation was not pleaded with particularity, and the court may treat her claim as abandoned. (*See* ECF No. 18, at 6-9); *Grinage*, 840 F.Supp.2d at 867 n.2.